UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

April 28, 2021

Andrew Olesnycky, Esq.
The Law Offices of Robert G. Stahl
53 Cardinal Drive
3rd Floor, Suite 4
Westfield, New Jersey 07090
*Counsel for Defendant*

Sarah A. Sulkowski, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:**   *United States v. Christopher Thieme*
          **Criminal Action No. 16-294 (SDW)**

Counsel:

Before this Court is Defendant Chistopher Thieme's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 24-1.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

## DISCUSSION

### A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a [statutorily authorized modification] in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) [("Section 3553(a)")] warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

### B.

On June 21, 2016, Defendant pleaded guilty to a two-count information, which charged him with attempted kidnapping and murder-for-hire. (D.E. 27 at 1); 18 U.S.C. § 1201(d); 18 U.S.C. § 1958(a). Given Defendant's concerning record of prior violent crimes against women, this Court sentenced Defendant to an aggregate 330 months' incarceration. (D.E. 27 at 2-3.) Defendant is currently serving his sentence at Fort Dix Federal Correctional Institution ("FCI Fort Dix"). (*Id*. at 3.)

On February 10, 2021, Defendant filed a counseled Motion for Compassionate Release ("Motion") (D.E. 24-1),[2] and on March 10, 2021, the Government opposed (D.E. 27). On April 6,

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

[2] Defendant had initially filed a *pro se* motion seeking alternate forms of relief under a different docket number. (*See* D.E. 24-1 at 3.)

2021, Defendant replied.  (D.E. 30.)  Since then, Defendant has also filed three supplemental letters.  (D.E. 31 (discussing vaccination status); D.E. 32 (correcting inaccurate statements regarding Defendant's medical treatment); D.E. 33 (updating declaration and medical status).)  The Government has also filed a letter regarding additional medical treatment that Defendant has received.  (D.E. 34.)

Defendant suffers from many health conditions, including, *inter alia*, hypertension, asthma, and kidney disease.  (*See* D.E. 24-1 at 5-7 (discussing Defendant's additional complaints regarding alleged cardiac symptoms).)  Defendant is also severely obese.  (*Id*. at 7.)  Defendant asserts that he was "confirmed positive for COVID-19" in October 2020 and took a turn for the worse "two weeks [after] the onset of illness."  (*Id*. at 4.)  In the months since, Defendant states that he has continued to suffer from chronic symptoms, including feeling "winded," "dizzy," and suffering from "coughing fits."  (*Id*.)

In opposition, the Government acknowledges Defendant's serious health issues, but argues that, as Defendant has already "contracted[] and recovered from" COVID-19, his health risk is now significantly lowered.  (D.E. 27 at 11-12.)  The Government also notes that Defendant has repeatedly seen medical staff for his complaints and has received the Moderna vaccine.  (*Id.* at 13-14 (noting that Defendant has received the first Moderna vaccine dose); D.E. 31 at 1 (noting that Defendant has received the second Moderna vaccine dose); D.E. 34 (discussing Defendant's normal test results and x-rays, as well as continued monitoring by FCI Fort Dix medical staff).)  The Government also argues that the Section 3553(a) factors weigh "decidedly against" Defendant's early release.  (D.E. 27 at 14.)

## C.

Although Defendant contracted COVID-19 in October 2020, he has since recovered sufficiently to test negative for the disease.  (D.E. 30 at 6.)  Therefore, this Court will focus its analysis on Defendant's ability to "provide self-care" within FCI Fort Dix in light of his medical conditions.  *See United States v. Adams*, Crim. No. 10-82, 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020) (describing how the compassionate release analysis shifts away from COVID-19 risk after a Defendant has contracted and recovered from the virus).  The parties do not dispute that Defendant suffers from significant health concerns, many of which the CDC acknowledges raised his risk of serious illness from COVID-19.  *See* CDC (Apr. 15, 2021 at 10:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Further, the record suggests that Defendant's preexisting health conditions likely contributed to the severity of his illness and may have also impeded his recovery.  (*See* D.E. 24-1; D.E. 30 at 3-4 (describing the possibility that Defendant is suffering from "long COVID" symptoms).)  The record indicates that FCI Fort Dix is still in the process of assessing Defendant's long-term, post-COVID symptoms.  (D.E. 30 at 7; D.E. 32 at 1; D.E. 34 at 1 (describing ongoing cardiac activity monitoring).)  Therefore, given Defendant's assertions regarding ongoing symptoms and a lack of conclusive medical testing,[3] at this stage, this Court will accept that Defendant's ability to provide self-care may have been diminished due to the impact of the virus.

---

[3] It seems that the disagreement regarding allegedly unproduced BOP medical records is no longer a live dispute.  (*Compare* D.E. 24-1 at 6-7 *with* D.E. 30 at 7.)  To the extent that any medical records exist that have not been produced to Defendant, however, the BOP is required to produce them.

Next, this Court turns to whether, given Defendant's potentially decreased ability to provide self-care, FCI Fort Dix is outfitted with the requisite medical facilities and resources to supplement that care and adequately meet Defendant's needs. *See Adams*, 2020 WL 4505621, at *3-4. Although the parties dispute whether FCI Fort Dix's medical interventions have been fast or comprehensive enough, the briefing suggests that FCI Fort Dix staff have followed up with Defendant in recent months and are moving forward with a plan to assess Defendant's testing results.[4] (*See* D.E. 32 at 1 (noting that Dr. Chinwalla ordered "a set of standard lab tests (including a lipid profile, TSH, T4, and metabolic profile)," "reviewed these tests on February 22, 2021," and intended "to follow up with Mr. Thieme on March 15, 2021"); D.E. 34 at 1 (noting that Dr. Chinwalla met with Defendant on April 20, 2021 and concluded that Defendant's tests did not suggest "abnormal[ities]").) Although Defendant had one follow-up appointment delayed, it would be inappropriate to infer wholly inadequate medical care from that one rescheduled medical consultation.[5] (*See id.*) In addition to this evidence that Defendant is accessing adequate medical care at FCI Fort Dix, (*see* D.E. 34), the Government has also averred that the facility took "extensive steps" to treat Defendant when he became sick, (D.E. 27 at 13), and has adopted many protective measures to guard against Defendant's reinfection, (*id.* at 3-6). Defendant has also now received both Moderna vaccine doses. (D.E. 27 at 9; D.E. 31; D.E. 33.) Therefore, his risk of severe illness through COVID-19 reinfection is now greatly reduced.

Weighing these factors, this Court will accept that Defendant's symptoms and medical history may amount to "extraordinary and compelling" health concerns. Nonetheless, viewing FCI Fort Dix's ability to provide adequate treatment alongside the Section 3553(a) factors, Defendant's early release is not warranted. *See* 18 U.S.C. § 3553(a).

The Section 3553(a) factors are "no mere afterthought." *United States v. Dunich-Kolb*, Crim. No. 14-150, 2020 WL 6537386, at *9 (D.N.J. Nov. 5, 2020). The factors, which retain an "independent bite," are particularly important in a case such as Defendant's, where they weigh overwhelmingly against early release. *Id.*; *United States v. Mainor*, Crim. No. 06-140-1, 2021 WL 183309, at *3 (E.D. Pa. Jan. 19, 2021) (denying compassionate release where an inmate, who suffered from heart disease and had recovered from COVID-19, was convicted of particularly serious crimes). Here, Defendant has a record of extremely concerning state and federal crimes of violence against women. (*See* D.E. 27 at 14-16.) As noted by the Government, Defendant "made

---

[4] FCI Fort Dix staff seems to be in the process of assessing some of Defendant's emergent health concerns, which Defendant acknowledges may or may not be COVID-19 related. (*See* D.E. 30 at 7; D.E. 34.) Given the unfinished and speculative nature of these health inquiries, it would be premature to determine that the facility lacks the resources necessary to treat unconfirmed health conditions. To the extent that Defendant requires an evaluation by a cardiology specialist in addition to Dr. Chinwalla's care (*see* D.E. 24-1 at 6; D.E. 34), FCI Fort Dix can (and should) grant such a referral in a timely fashion. If any such treatments result in new compelling evidence, Defendant retains the right to refile.

The parties also dispute the accuracy of certain FCI Fort Dix medical notes. (*See* D.E. 30 at 6 (disputing the accuracy of medical notes recorded by FCI Fort Dix staff); *but see* D.E. 27 at 13 (noting that Defendant denied COVID-19 symptoms in November 2020).) Even accepting Defendant's alleged symptoms (which he argues were not accurately recorded by staff), the record does not suggest that FCI Fort Dix is incapable of providing or coordinating medical interventions or treatments to alleviate those symptoms. (*See* D.E. 27 at 12-13.)

[5] Although Defendant's references to prior FCI Fort Dix COVID-19 deaths are concerning, (*see* D.E. 30 at 8-10), this Court assesses each motion for compassionate release individually, based on the movant's health conditions, criminal history, vaccination status, and Section 3553(a) factors.

every effort to execute a detailed plan to kidnap, rob, and murder a woman who had spurned his sexual advances." (D.E. 27 at 14.) Moreover, Defendant has a "longstanding pattern of violence and aggression towards women," including "repeatedly" striking a woman "in the head with a pool cue," cyberstalking, and sexually assaulting the woman who he later attempted to have murdered. (*Id.*) Prior convictions and probation have not quelled Defendant's impulses to reoffend, suggesting that a significant term of incarceration is the best way to "protect the public" from Defendant's recidivism. (*Id.*); 18 U.S.C. § 3553(a).

Based on evidence presented to this Court, Defendant's sentence was appropriately set at the top of the Guidelines range. (D.E. 27 at 2-3.) Nothing has changed that assessment, particularly given the fact that Defendant has only served roughly 30% of his underlying sentence. (*Id.*) Therefore, a reduction of sentence in this case would not reflect the "seriousness of [Defendant's] offenses," which devastated their victims, or "promote respect for the law" and "deterrence." 18 U.S.C. § 3553(a). Although it is encouraging to learn that Defendant has engaged positively with rehabilitative prison programming, (D.E. 24-1 at 3-4), releasing a dangerous inmate such as Defendant based on unconfirmed health conditions and fears of COVID-19 reinfection would be premature and unsupported by the requisite sentencing guidelines.

Thus, Defendant has failed to meet the high bar required to justify early release and his Motion must be denied.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties