**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

August 28, 2024

Christopher Thieme
Register No. 69451-050
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640
*Pro se Defendant*

Robert Taj Moore
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re:** *United States v. Christopher Thieme*,
 **Criminal Action No. 16-294 (SDW)**

Litigants:

Before this Court is Defendant Christopher Thieme's ("Defendant") Motion for Compassionate Release[1] under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 54.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

**DISCUSSION**

A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Brow*, 62 F.4th 114, 118 (3d Cir. 2023), the FSA permits district courts to grant compassionate

---

[1] It is unclear whether Defendant intended to file a new motion for compassionate release or to request reconsideration of his previous motion for compassionate release, filed February 10, 2021. (D.E. 24-1.) Defendant describes his new Motion as a "renewal" of the first motion. (D.E. 54 at 1.)

1

release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . .

18 U.S.C. § 3582(c)(1). Accordingly, under the FSA, a "defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

The prerequisites for judicial review are straightforward. First, a defendant seeking a reduced sentence must ask the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf. 18 U.S.C. § 3582(c)(1)(A). Then, the defendant must either (i) wait thirty days for the BOP to respond; or (ii) exhaust all available administrative appeals after receiving an adverse decision from the BOP. *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)).

Once a defendant has satisfied those prerequisites, a court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[2] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)), *aff'd*, 837 Fed. App'x 932, 934 (3d Cir. 2021).

---

[2] Although the Sentencing Commission's policy statement is not binding on this Court, "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health due to aging, that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and from which they are not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

B.

On June 21, 2016, Defendant pleaded guilty to one count of kidnapping, in violation of 18 U.S.C. § 1201(d), and one count of murder-for-hire, in violation of 18 U.S.C. § 1958(a). (D.E. 12; D.E. 13; D.E. 14.) On December 19, 2016, Defendant was sentenced to 210 months' imprisonment on Count One and 120 months' imprisonment on Count Two, running concurrently. (D.E. 16.)

### Defendant's First Motion for Compassionate Release

Defendant, with counsel, filed his first Motion for Compassionate Release ("First Motion") on February 10, 2021. (D.E. 24.) One month later, the Government opposed the First Motion. (D.E. 27.) Thereafter, Defendant filed a reply and several supplemental letters. (D.E. 30; D.E. 31; D.E. 32; D.E. 33.)

On April 28, 2021, this Court denied the First Motion, holding that while "Defendant's symptoms and medical history may amount to 'extraordinary and compelling' health concerns," early release was not warranted given the ability of FCI Fort Dix to provide medical treatment combined with analysis of the Section 3553(a) factors. (D.E. 35 at 4.)

### The Second Motion

On March 3, 2022, Defendant, now proceeding *pro se*, filed a letter entitled a "Renewed Motion for Compassionate Release" ("Second Motion"). (D.E. 54.) Defendant reiterates arguments from the First Motion, citing COVID reinfection, long COVID symptoms, and an asserted lack of adequate medical care by BOP as extraordinary and compelling reasons for release, and notes his lack of a disciplinary record and continued efforts at self-improvement. (*Id*.) Defendant also states that "the court relied upon certain circumstances, assumptions, and assurances – namely that the Government would create a plan to address the Defendant's medical needs in the wake of his COVID illness and the long COVID conditions he continues to experience and suffer from, including but not limited to the scheduling of care by a cardiologist or other specialists." (*Id.*) Defendant also introduces new arguments as to why his circumstances are "extraordinary and compelling." He raises inadequate medical care as an Eighth Amendment violation, cites new potential diagnoses and risks arising since his First Motion, alleges water contamination at FCI Fort Dix, claims that the poor conditions have resulted in punishment harsher than that envisioned by the Court at sentencing, and cites a lack of court-recommended action by BOP. (*Id.*) Defendant further claims that his allegations amount to an unjust punishment requiring rebalance of the 3553(a) factors, that his mental health has declined, and that he was over-sentenced due to "double counting" from sentence enhancement. (*Id*.)

Defendant initially filed several letters supplementing his motion — on March 29, 2022 (D.E. 55) (requesting a hearing and docket access), April 27, 2022 (D.E. 57) (alleging inadequate medical care, poor prison conditions, and sentencing issues), June 7, 2022 (D.E. 58) (re-alleging inadequate medical care), and two letters on July 6, 2022 (D.E. 60) (re-filing two letters reiterating his arguments that had not yet appeared on the docket); (D.E. 63) (emphasizing good conduct and alleging poor prison conditions and inadequate medical care).

3

On July 11, 2022, the Government opposed the Second Motion, noting several issues. (D.E. 61.) First, the Government states that the Motion — whether it was one for reconsideration or a new motion for compassionate release — suffers from procedural defects. Specifically, the Government contends, if the Motion was one for reconsideration, it was untimely, and if it was a new motion for compassionate release, it was premature because Defendant had not exhausted his administrative remedies in compliance with 18 U.S.C. § 3582(c). Second, the Government argues that, even if this Court were to reach the merits of the Second Motion, it fails to demonstrate that any new facts exist to justify a different decision than the one set forth in this Court's Letter Opinion.[3] (D.E. 61 at 5.)

On July 27, 2022, Defendant filed via letter a reply to the Government's opposition brief. (D.E. 65.) Defendant argues that the Government mischaracterized the Second Motion, stating that "[t]his court invited [him] to refile." (*Id.* at 1.) Also in his reply, Defendant agrees that FCI Fort Dix is "outfitted" to provide medical care but asserted that he has not and likely will not receive any. (*Id.* at 1.) He also disputes that the list of medical appointments cited by the Government indicates provision of adequate medical care. (*Id.* at 1–2.) Instead, Defendant states that many of the instances cited are simply a medical professional acknowledging the receipt of test results, not engaging either with Defendant or with his results, and that no necessary "interventions or referrals" have been made on his behalf by medical personnel. (*Id.*) Defendant also cites to other cases wherein incarcerated individuals brought suit against FCI Fort Dix for inadequate provision of medical care. (*Id.* at 3–4.) Defendant further disputes the Government's other contentions as to evidence of the safety of the drinking water at FCI Fort Dix and its relevance to his case (D.E. 65 at 4–5), whether USSG 1B1.13 applies to inmate-filed motions (*Id.* at 5), the risk of COVID-19 reinfection, and the sentencing implications and facts of his criminal history (*Id.* at 5–6).

Since filing his reply, Defendant has submitted numerous letters:

- August 25, 2022: letter noting that he had requested BOP staff file a request for compassionate release on his behalf on July 14, 2022, and asserting that he had received nothing in response (D.E. 66);

- September 13, 2022: letter reiterating his assertion that there was an error in calculating his sentence and noting that he does not use drugs (D.E. 67);

- October 19, 2022: letter noting the amount of sentence completed, alleging over-sentencing and insufficient medical care (D.E. 68);

- December 28, 2022: letter reiterating his allegations of inadequate medical care and a sentencing error; emphasizing good conduct and rehabilitation efforts (D.E. 69);

---

[3] To demonstrate the ability of the BOP to provide care, the Government provided a list of Defendant's medical appointments at FCI Fort Dix. (*Id.* at 6–7.) The Government also noted that a "speculative risk of reinfection with COVID-19" is not a "basis for compassionate release." (*Id.* at 8.) Finally, the Government reiterated that analysis of the 3553(a) factors weigh against compassionate release. (*Id.*)

4

- January 9, 2023: letter noting several potentially relevant cases and alleging over-sentencing (D.E. 70);

- January 31, 2023: letter requesting judicial notice of two documents regarding sentencing guidelines (D.E. 71);

- March 21, 2023: letter reiterating his arguments as to a sentencing error, long COVID, inadequate medical treatment, and his rehabilitation (D.E. 72);

- May 19, 2023: letter requesting the court take judicial notice of several reports by the U.S. Department of Justice's Inspector General's office, reiterating his assertion that his sentence was miscalculated, noting the resolution of another case potentially affecting his criminal history, updating the court on his pending class action suit, detailing his continued efforts at rehabilitation, and describing his sister's illness (D.E. 73);

- May 31, 2023: letter reiterating his assertion that his sentence was miscalculated, and updating the court on his continuing medical issues (D.E. 74);

- July 11, 2023: letter reiterating his arguments as to inadequate care, prison conditions, contaminated water, over-sentencing, and rehabilitation efforts (D.E. 75);

- February 6, 2024: two letters offering the court a tour of FCI Fort Dix, describing his ongoing medical issues, advising the court on recent case law, reiterating his allegations of constitutional violations, describing the impact of COVID-19 lockdowns on prison conditions, reiterating a challenge to his restitution order, describing his post-sentencing rehabilitation efforts, and providing an update on his class action lawsuit[4] (D.E. 77-78);

- July 12, 2024: letter reiterating his previous arguments, noting his referral to a cardiologist with a wait of 6-12 months, and citing potentially relevant cases (D.E. 79);

- July 26, 2024: letter reiterating previous arguments, describing inadequate care as to another prisoner, and presenting data on compassionate release filings (D.E. 81)[5]; and

---

[4] Defendant has a pending class action lawsuit alleging negligence at Fort Dix related to the COVID-19 pandemic. *See Thieme, et al. v. United States, et al.*, No. 1:21-cv-00682-RMB-AMD (D.N.J. 2021).

[5] This Court has also reviewed a letter that was filed on August 1, 2024 (D.E. 80), which appears to be a copy of the July 26, 2024 letter.

5

- August 13, 2024: letter providing an affidavit from another inmate, directing the Court to a recent case in the First Circuit, and expressing continued concerns over prison conditions (D.E. 82).

C.

Defendant's Second Motion, if construed as a motion for reconsideration, is untimely. A motion for reconsideration must be filed within 14 days after the entry of the order or judgment on the original motion, (Civ. Rule 7.1),[6] and Defendant here filed the Second Motion nearly a year after the Court issued its denial of his First Motion. (D.E. 35; D.E. 54) (Letter Opinion filed April 28, 2021; Second Motion filed March 3, 2022.)

Moreover, even if this Court considers the Second Motion to be a new motion for compassionate release, Defendant has failed to demonstrate that he exhausted administrative remedies *before* filing a new motion for compassionate release,[7] which "presents a glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020); *Epstein*, 2020 WL 1808616, at *2; *see also* 18 U.S.C. § 3582(c)(1)(A). While Defendant did submit to the BOP a request that they file a motion for compassionate relief on his behalf on July 14, 2022, (D.E. 66), this only occurred after he filed his own motion on March 3, 2022. (D.E. 54). This after-the-fact attempt to exhaust administrative remedies does not suffice, and the Second Motion is deniable on this basis as well. *See Epstein*, 2020 WL 1808616, at *2; *see also United States v. Caraballo*, No. 14-0255, 2022 WL 60697, at *2 (D.N.J. Jan. 6, 2022), *aff'd* 2022 WL 3754618 (3d Cir. Aug. 30, 2022) ("'[S]trict compliance' with the exhaustion requirement ... is critical.").

D.

Notwithstanding the above-referenced procedural defects in the Second Motion, Defendant fails to establish any new "extraordinary and compelling" circumstances beyond what this Court has already assessed in its first opinion. Instead, Defendant continues to cite chronic illnesses, lack of adequate medical care, prison conditions, and unjust sentencing. (D.E. 54.) Defendant asserts that he was re-infected with COVID since his last motion and reiterates that he is suffering from symptoms that might indicate long COVID. (*Id.* at 3, 5.) Defendant also reasserts that he is a good candidate for supervised release/home confinement and notes his lack of a disciplinary

---

[6] Civil Rule 7.1 is also applicable to criminal cases in the District of New Jersey. Cr. R. 1.1.

[7] In the Second Motion, Defendant mischaracterizes this Court's first Opinion. This Court noted, in reference to several conditions claimed by the Defendant as ongoing medical issues, that "If any such treatments result in compelling new evidence [of the facility's inability to provide a treatment], Defendant retains the right to refile." (D.E. 35 at 4.) Defendant, in the Second Motion, does not present any new evidence or evidence of new medical conditions or follow the statutorily prescribed process for filing the motion.

6

record and continued self-improvement via various continuing education and college courses. (D.E. 54 at 8).

This Court recognizes that Defendant's various diagnosed medical issues, including obesity and hypertension, might worsen a COVID infection. However, the mere risk of reinfection is insufficient to warrant compassionate release. *See United States v. Dodard,* No. 14-464-SDW, 2022 WL 2063600, at *2 (D.N.J. June 8, 2022) (collecting cases). Defendant is vaccinated against COVID, and has recovered from COVID at least once before. (D.E. 35 at 3.) The risk of a fatal or serious COVID reinfection is therefore both speculative and significantly reduced and does not constitute "extraordinary and compelling" circumstances. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release").

Defendant has also failed to carry his burden of demonstrating that FCI Fort Dix is not providing adequate medical care. Though Defendant disputes the extent of his treatment, medical records indicate that, from April 2021 through May 2022, Defendant received medical care on 18 occasions, including a COVID vaccine booster. (D.E. 61 at 6–7.)[8] Beyond his own allegations, Defendant has provided no evidence of inadequate care or of FCI Fort Dix's inability to treat his diagnosed conditions.

Defendant's worsening mental health purportedly caused by prison conditions resulting from COVID lockdowns also does not constitute an "extraordinary and compelling" circumstance as lockdown conditions are not unique to this Defendant. *United States v. Ali,* Crim. No. 11-00752 (NLH), 2022 WL 3357915, at *4 (D.N.J. Aug. 15, 2022); *United States v. Jones*, Crim. No. 07-143 (SRC), 2023 WL 2986928, at *4 (D.N.J. Apr. 18, 2023); *United States v. Carabello*, Crim. No. 14-0255, 2022 WL 60697, at *6 (D.N.J. Jan. 6, 2022).

Finally, a lack of disciplinary record does not constitute "extraordinary and compelling" circumstances, nor do efforts at rehabilitation or continuing education. *See United States v. McNair*, 481 F.Supp.3d 362, 370 (D.N.J. 2020). While Defendant's behavior, efforts at rehabilitation, and self-improvement are encouraging, defendants are expected to comply in this regard. Rehabilitation efforts themselves are not an extraordinary and compelling circumstance. 28 U.S.C. § 994(t).

In the Letter Opinion denying Defendant's First Motion, this Court found that "Defendant's symptoms and medical history may amount to 'extraordinary and compelling' health concerns." As detailed again in his Second Motion, Defendant's ongoing health issues may continue to constitute "extraordinary and compelling" circumstances, though he has presented no evidence of additional circumstances that would warrant sentence reduction.[9] Early release is still not

---

[8] In his July 12, 2024 letter, Defendant also notes that he has been referred to a cardiologist, though he expects to wait 6-12 months for the appointment. (D.E. 79 at 3.)

[9] Defendant references alleged water contamination at FCI Fort Dix as an extraordinary and compelling circumstance. (D.E. 54 at 4–5.) His allegations are unsupported by evidence generally and, without evidence of specific harm to the defendant, do not constitute extraordinary and compelling circumstances. *See United States v. Burd*, 2023 WL 3271167, at *5 (D.N.J. 2023).

warranted given FCI Fort Dix's continuing ability to provide adequate medical care and the balance of the Section 3553(a) factors.

Section 3553(a) directs the court to consider certain factors when sentencing, including the nature of the offense, the defendant's history, and the effect the sentence may have on the defendant and others. 18 U.S.C. § 3553(a). Here, the 3553 factors weigh strongly against release and, as this Court has noted, the Section 3553(a) factors "are particularly important in a case such as Defendant's, where they weigh overwhelmingly against early release." (D.E. 35 at 4). Nothing raised by the Second Motion leads to a different outcome. The nature and circumstances of the crime in the present case remain as they were when this Court sentenced the Defendant and decided the first motion, as has Defendant's history. As noted by the Government, Defendant "made every effort to execute a detailed plan to kidnap, rob, and murder a woman who had spurned his sexual advances." (D.E. 61 at 8.) He "has a record of extremely concerning state and federal crimes of violence against women." (D.E. 35 at 4).[10] Defendant was sentenced at the top of the range recommended by the Guidelines. (D.E. 61 at 2.) The sentence imposed by this Court remains just,[11] reflects the seriousness of the crime, and promotes respect for the law. 18 U.S.C. 1553(a). Such a sentence acts as a deterrence and remains necessary to protect the public. As this Court previously found, and in reference to another of the Section 3553(a) factors, "[p]rior convictions and probation have not quelled Defendant's impulses to reoffend, suggesting that a significant term of incarceration is the best way to 'protect the public' from Defendant's recidivism." (D.E. 35 at 5) (citations omitted.)

This Court's previous conclusion still stands: "A reduction of sentence in this case would not reflect the 'seriousness of [Defendant's] offenses,' which devastated their victims, or 'promote respect for the law' and 'deterrence.' 18 U.S.C. § 3553(a). Although it is encouraging to learn that Defendant has engaged positively with rehabilitative prison programming, (D.E. 24-1 at 3–4), releasing a dangerous inmate such as Defendant based on unconfirmed health conditions and fears of COVID19 reinfection would be premature and unsupported by the requisite sentencing guidelines." (D.E. 35 at 5.)

---

[10] Defendant has asked this Court to consider a recent Supreme Court decision that may be relevant to his state-level conviction. (D.E. 73 at 2.) Defendant also disputes the Government's assertion that his criminal history actually worsened after his sentencing because of the state level conviction. (D.E. 65 at 5.) Defendant notes that, at the time of his sentencing, the Government and this Court were both aware of the pending case in state court, so the later conviction does not worsen his criminal history. (*Id*.) While an additional conviction may exacerbate the criminal history for purposes of a pre-sentencing report (*see* Fed. R. Crim. P. 32(d)), this plays no part in this Court's decision and opinion as to the Second Motion.

[11] Defendant has also argued that the conditions he alleges at FCI Fort Dix constitute a violation of the Eighth Amendment, (D.E. 54 at 2), and that his sentence is impermissibly long because of "double-counting" in his sentencing, (D.E. 54 at 7). Even if proven to be true, neither are appropriately addressed in this Second Motion.

8

**Conclusion**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. An appropriate order follows.

                                                /s/ Susan D. Wigenton
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties